UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE SARKISOV,<br><br>           Plaintiff,<br><br>    v.<br><br>STONEMOR PARTNERS L.P., et al.,<br><br>           Defendants. | Case No. 13-cv-04834-JD<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPROVING ATTORNEYS' FEES AND COSTS, AND DENYING INCENTIVE PAY TO CLASS REPRESENTATIVE**<br><br>Re: Dkt. Nos. 104, 106, 113 |

In this employment class action dispute, the Court previously granted preliminary approval of a proposed class action settlement. Dkt. No. 100. This order resolves plaintiff's unopposed motions for: (1) final settlement approval and certification of a settlement class; (2) attorneys' fees and costs; and (3) incentive pay to the class representative George Sarkisov. Dkt. Nos. 113, 104, 106. The Court found in its discretion that these matters were suitable for resolution without oral argument. Dkt. No. 115; *see* Fed. R. Civ. P. 78(b); N.D. Cal. Civil L.R. 7-1(b). The Court grants the first two motions and denies the third.

## BACKGROUND

The salient facts are set out in the Court's preliminary approval order. Dkt. No. 100. As a high-level recap, plaintiff George Sarkisov was employed as a family service counselor at a cemetery, Olivet Memorial Park, by defendants StoneMor Partners L.P. and StoneMor GP LLC (together "StoneMor"). Dkt. No. 79 ¶ 4. Mr. Sarkisov alleges that StoneMor failed to pay him and "other family service counselors overtime in weeks when they worked over 40 hours" in violation of the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), as well as

failing to comply with various other California state laws in terms of their compensation and treatment of employees.[1]

The parties initially entered into a settlement agreement on October 2, 2014. The Court denied preliminary approval of it because of multiple deficiencies, such as the parties' failure to specify how unclaimed funds over $20,000 would be redistributed and the inadequacy of the proposed means by which potential class members would be notified of the settlement. Dkt. No. 90. The parties executed a revised settlement agreement on December 10, 2014, which is now the operative agreement. Dkt. No. 94-3. The Court granted preliminary approval on March 18, 2015, after the parties fixed the Court's concerns and because the revised agreement was "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e)(1)(C). Dkt. No. 100.

The settlement will bind, unless they opted out, "[a]ll persons who work or worked for StoneMor in StoneMor's Western Region as family service counselors at any time from October 1, 2011 through the date of preliminary approval of the Settlement or in California as family service counselors at any time from 9/11/2009 through the date of preliminary approval of the Settlement." Dkt. No. 94-3 ¶ 8. These dates approximate the statutes of limitations applicable to the claims.

Under the agreement, "StoneMor will pay a Gross Settlement Amount of $850,000." Dkt. No. 94 at 12. The agreement documents class counsel's intention to seek up to $212,500 out of this settlement amount (which amounts to twenty-five percent of the total), as well as up to $20,000 for reimbursement for out-of-pocket costs. *Id.* The agreement also indicates class representative Mr. Sarkisov's intention to ask to receive a service payment of $7,500. *Id.* An additional $25,000 was estimated for the settlement administrator, and the parties planned to pay $7,500 to the LWDA for the state's statutory share for the PAGA class claim for wage and hour violations. *Id.* The parties estimated that $577,500 would remain after these estimated costs are deducted, and this amount was proposed to be distributed to the class members pro rata, based on

---

[1] Mr. Sarkisov initially had some additional claims he was asserting on an individual basis, but those claims have now been withdrawn. Dkt. No. 88. The eleven remaining claims are all asserted on a class or collective action basis.

2

how many weeks they were employed as family service counselors in the time frames at issue. *Id.* at 13. $75,000 of this amount, the "FLSA Amount," is allocated to the Western Region class members, while the remaining $502,500 is reserved for settlement of the California claims. *Id.* at 12-13. The disparity in the amounts exists because the Western Region class members have only the FLSA claim, while the California class members have the additional claims under California state law. *Id.* at 20-21.

Significantly, the class members do not have to submit claim forms in order to receive a settlement check; <u>all</u> class members will receive a check unless they exclude themselves from the settlement or their notices are returned as non-deliverable. Dkt. No. 94 at 13. If the amount of uncashed checks totals more than $20,000, those funds are to be redistributed to the class members who cashed their initial checks on a pro-rata basis. *Id.* at 14. If the amount is less than $20,000, it will go to two cy pres beneficiaries, the Bet Tzedek Employment Rights Project in Los Angeles and the Legal Aid Society-Employment Law Center in San Francisco. *Id.*

As for a release, the California class members, apart from those who submit exclusion letters or whose notices are returned by the postal service, release StoneMor from "any and all state law claims of every nature or description . . . related to and arising from the allegations in the Class Claims . . . ." *Id.* ¶ 49. The Western Region class members who cash their settlement checks thereby opt in to an FLSA class and also release StoneMor "from any and all claims of every nature or description under the FLSA related to and arising from the allegations in the first claim for relief" in the complaint. *Id.* ¶ 50. Class members in both classes retain all claims not arising out of or relating to the allegations in the complaint. Mr. Sarkisov goes further and fully releases StoneMor from any and all claims he may have against them, up to the date of final approval. *Id.* ¶ 52.

Plaintiff now reports that notice has been provided in accordance with the proposed settlement agreement. Notice packets were mailed to last-known mailing addresses and to e-mail addresses, where known, and "an additional mailing was completed to the class members currently employed by StoneMor addressed to their workplace addresses." Dkt. No. 113 at 15. Notice was also published in the national edition of USA Today. *Id.* Efforts were made to locate new

3

addresses, and notice packets were re-mailed, for those whose packets were returned in the first go-around. Two of those people in fact turned out to be current StoneMor employees and thus should have received packets at their workplace addresses. After all was said and done, "only five notice packets out of 462 have been deemed undeliverable." *Id*. at 15-16. No class member has disputed the number of workweeks stated for that class member in the notice he or she received, and no class member has objected to the settlement. *Id*. at 16-17. Only one class member has excluded herself. *Id*. at 17.

## DISCUSSION

### I. FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FINAL CERTIFICATION OF SETTLEMENT CLASS

In the order granting preliminary approval, the Court found that the proposed settlement satisfies the requirements of Federal Rule of Civil Procedure 23(a), namely, numerosity, commonality, typicality and adequacy of representation. Dkt. No. 100 at 7. The Court further found that the proposed class met the predominance and superiority requirements of Rule 23(b)(3). *Id*. The Court also reached the conclusion that the proposed agreement was "fair, reasonable, and adequate" under Rule 23(e)(1)(C). *Id*. at 5.

The Court finds that these conclusions hold at this final approval stage. The relief the class would get is reasonable in light of the risks they face. For the strengths and weaknesses of plaintiff's case, plaintiff's motion identifies the many bases on which StoneMor "hotly disputes" plaintiff's claims. *See* Dkt. No. 113 at 5-11. By settling, the class avoids the risk that the Court will find merit in any one of those bases, and each member will instead simply receive a check in the mail that in many cases will likely be for a significant sum, possibly in the thousands of dollars. Mr. Sarkisov, for example, expects to receive a settlement check of close to $6,000 for his weeks worked. Dkt. No. 106-1 at 2.

The Court also finds that the discovery done in the case was appropriate, and plaintiff's counsel has detailed a sufficiently robust investigation into class and liability issues. Dkt. No. 113 at 4. Last but not least, not a single class member has objected to the proposed settlement, which is a significant factor in favor of final approval. *See Nat'l Rural Telecomms Coop. v. DIRECTV,*

1  *Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a
2  proposed class action settlement raises a strong presumption the terms of a proposed class
3  settlement action are favorable to the class members"); *see also Churchill Vill., L.L.C. v. Gen.*
4  *Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (listing "the reaction of the class members to the
5  proposed settlement" among the "non-exclusive" settlement evaluation factors courts are to
6  consider before granting approval).

7  On the FLSA side of the case, the Court found at the preliminary approval stage that
8  plaintiff had satisfied the standard for conditional certification of the FLSA collective action,
9  which is more lenient than the requirements for certification under Federal Rule of Civil Procedure
10 23. Dkt. No. 100 at 8. That conclusion, too, still holds. And for the same reasons identified
11 above, the Court finds that the proposed FLSA settlement constitutes a "fair and reasonable
12 resolution of a bona fide dispute," and approves it. *Lynn's Food Stores, Inc. v. United States*, 679
13 F.2d 1350, 1353 (11th Cir. 1982).

14 Consequently, the Court grants final approval of the proposed settlement, finally certifies
15 the Western Region Collective Action and California Class as proposed, and confirms the
16 appointment of George Sarkisov as class representative and Bruce Highman as class counsel.

17 **II. ATTORNEYS' FEES AND COSTS**

18 Plaintiff's counsel seeks the Court's approval to "pay $212,500 in attorneys' fees to class
19 counsel," as well as to reimburse counsel for total litigation costs of $12,197.22. Dkt. No. 104 at
20 1, Dkt. No. 111-1 at 2. Reasonable attorney's fees and costs are allowed under Federal Rule of
21 Civil Procedure 23(h) and Section 216 of the FLSA, 29 U.S.C. § 216(b), both of which apply to
22 this case.

23 For the fees, plaintiff notes that the "$212,500 represents 25% of the $850,000 class
24 settlement." Dkt. No. 104 at 1. This amount is consistent with the "benchmark" in our Circuit
25 when fees are sought in this manner. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,
26 949 (9th Cir. 2015) ("Under the percentage-of-recovery method, the attorneys' fees equal some
27 percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%.").
28 The reasonableness of the fees requested is confirmed by the fact that the percentage-based fee

1   award sought by counsel ($212,500) is only 61% of what the fees would be if calculated under the

2   alternate lodestar method ($347,665). Dkt. No. 111-1 at 2. *See Vizcaino v. Microsoft Corp.*, 290

3   F.3d 1043, 1050 (9th Cir. 2002) (approving the district court's use of the lodestar method "as a

4   cross-check of the percentage method"). The Court finds that the unopposed fee request is further

5   adequately supported by the detailed records and conscientious calculations plaintiff has

6   submitted, Dkt. No. 105, and the Court approves it.

7       Plaintiff's counsel also claims $12,197.22 in costs, which is well below the $20,000 limit

8   contemplated by the settlement agreement. The Court finds the requests for costs, too, is well-

9   documented and reasonable, and the Court awards the costs as requested.

## III. INCENTIVE AWARD

11   The "incentive payment" request is denied. Plaintiff asks the Court to award an extra

12   $7,500 to George Sarkisov, the sole named plaintiff and class representative. Dkt. No. 106.

13   The Court, following the Ninth Circuit, has previously expressed strong skepticism of

14   arrangements whereby named plaintiffs do better than ordinary members of the class, based on the

15   danger that it may lead to collusive settlements and conflict within the plaintiff's side of the case.

16   *See Myles v. AlliedBarton Sec. Servs., LLC*, No. 12-cv-05761, 2014 WL 6065602, at *6 (N.D. Cal.

17   Nov. 12, 2014) ("Absent a particularized showing of expenses incurred or injury suffered by [the

18   named plaintiff] (above and beyond those of the other proposed class members), an enhancement

19   award is inappropriate."); *Stokes v. Interline Brands, Inc.*, No. 12-cv-05527-JD, 2014 WL

20   5826335, at *6 (N.D. Cal. Nov. 10, 2012). Indeed, the Court has expressly advised the parties in

21   this case on a number of occasions that this is a "practice that this Court normally rejects." *See*,

22   *e.g.*, Dkt. No. 100.

23   The Court sees no reason to change positions in this action. Plaintiff had already been an

24   ex-employee of defendants for more than a year by the time he filed his complaint. *See* Dkt.

25   No. 79 ¶ 4 (alleging "constructive discharge on September 27, 2012"); Dkt. No. 1 (initial

26   complaint, filed on October 17, 2013). Consequently, this is not a situation where the named

27   plaintiff could have been retaliated against. *Cf. Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir.

28   2003). It also does not appear that the plaintiff has undertaken unusually extensive work on behalf

of the class. Rather, Mr. Sarkisov's participation in the case appears largely to have consisted of routine meetings and communications with counsel (along with some communications with other class members), and attending one all-day mediation. Dkt. No. 106-1 at 2. It does not appear Mr. Sarkisov even sat for a deposition. *Id.* Moreover, he will in any event be receiving $5,949.71, a substantial sum, as his personal share of the class settlement. *Id.*

The request for an incentive payment is denied, but Mr. Sarkisov may be reimbursed for any out-of-pocket costs and any work missed.

## CONCLUSION

The Court grants plaintiff's (1) motion for final approval of class settlement and for final certification of settlement class, Dkt. No. 113, and (2) motion for attorneys' fees and costs, Dkt. No. 104. The Court grants final approval of the proposed settlement, finally certifies the Western Region Collective Action and California Class as proposed, and confirms the appointment of George Sarkisov as class representative and Bruce Highman as class counsel. The Court further approves the payment of $212,500 in attorneys' fees and $12,197.22 in costs to class counsel.

Plaintiff's motion for incentive pay to class representative George Sarkisov, Dkt. No.106, is denied, except that Mr. Sarkisov may be reimbursed for any out-of-pocket costs and any work missed.

The parties are ordered to comply with the remaining terms of the revised settlement agreement, Dkt. No. 94-3, and the Clerk is requested to close the file and terminate any pending matters.

**IT IS SO ORDERED.**

Dated: September 30, 2015

_____
JAMES DONATO
United States District Judge

7